UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW AND MARINA FOX, | No. 2:14-cv-02947-KJM |
| Plaintiffs-Appellants, | |
| v. | ORDER |
| ROBERT MICHAEL DE LONG, | |
| Defendant-Appellee. | |

Andrew and Marina Fox appeal the bankruptcy court's judgment for Robert De Long. The Foxes hired De Long's company, Cascadian, to do construction and landscaping work on their home in Sacramento, California. Before the work was completed, and with $189,400 paid to him, De Long filed for bankruptcy. In an adversary proceeding, the Foxes alleged De Long accepted their money under false pretenses, never intended to finish the work, and intentionally caused them harm. Following a bench trial, the bankruptcy judge found for De Long, and the debt was dischargeable. The Foxes appealed.

The court heard oral argument on this matter on August 7, 2015, at which Daniel Baxter and George Guthrie appeared for the Foxes and Jeffrey Kravitz appeared for De Long. After reviewing the parties' briefing and hearing oral argument, the court affirms in part and reverses in part.

/////

1    I.      BACKGROUND

2              Andrew and Marina Fox hired Cascadian Landscape, owned by Robert Michael

3    De Long, to do landscape and construction work on their home in Sacramento.  Appellants'

4    Excerpts of Record (ER) 342.[1]  The original contract was signed in July 2010 for $246,000.  *Id.*

5    It established a payment schedule with fixed sums due at 30, 50, 75, and 100 percent completion,

6    but did not specify a completion date.  ER 352.  In July 2011, the Foxes made an unscheduled

7    $20,000 payment, and the parties amended the contract to provide for additional landscaping and

8    an August 2011 completion date.  ER 357.  In September 2011, with work still incomplete, the

9    Foxes agreed to make another unscheduled payment of $15,000, contingent upon completion by

10   October 15, 2011.  ER 360.  Cascadian never completed the work, and the Foxes hired another

11   contractor, Jeremy Gyori, to finish the job.  ER 234–41.

12             In March 2012, Robert De Long filed a voluntary Chapter 7 bankruptcy petition.

13   Pet., No. 12-26226 (E.D. Cal. filed Mar. 30, 2012), ECF No. 1.[2]  Cascadian filed a similar

14   petition in May 2012.  Pet., No. 12-29906 (E.D. Cal. filed May 23, 2012), ECF No. 1.  Andrew

15   and Marina Fox were listed as creditors only on Cascadian's petition.  *Id.*  In July 2012, the Foxes

16   filed an adversary proceeding against De Long, alleging Cascadian was a financially insolvent

17   shell corporation used by De Long to avoid individual liability.  ER 328–29.  They alleged De

18   Long took their money, did not intend to complete the landscaping work, and used the money for

19   other purposes.  ER 338.  The Foxes sought a determination of non-dischargeability under

20   /////

21

22             [1] Page ranges in these record citations refer to the Bates-stamped page ranges prefixed by
     "FOX ER."

23
              [2] On its own motion, the court takes judicial notice of the bankruptcy petitions
24   No. 12-26226 (E.D. Cal. filed Mar. 30, 2012) and No. 12-29906 (E.D. Cal. filed May 23, 2012),
     and the pleadings in the adversary proceeding No. 12-02298 (E.D. Cal. filed Jul. 9, 2012).  Under
25   Federal Rule of Evidence 201, a court may take judicial notice of the records of inferior courts in
     other cases, *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980), including underlying
26   bankruptcy records, *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9th Cir. 1989), and court
     records available to the public through the PACER system, *United States v. Reed*, No. 05-0431,
27   2006 WL 3734174, at *2 (E.D. Cal. Dec. 15, 2006) (citing *United States v. Howard*, 381 F.3d
     873, 876 n.1 (9th Cir. 2004)).
28

11 U.S.C. § 523(a).[3]  ER 338–40.  De Long answered the Foxes' complaint, denying Cascadian was his alter ego,[4] denying he had contracted with the Foxes in an individual capacity, and denying he had defrauded the Foxes, among other things.  Answer, No. 12-2298 (E.D. Cal. filed Jul. 9, 2012), ECF No. 8.

    A.    Pre-Trial Proceedings

        During pre-trial discovery, the Foxes served De Long with requests for admissions.  ER 112–16.  The Foxes asked De Long to admit, among other things, that he did substandard work, intended to defraud them, diverted their money to other uses, never intended to complete the job, and had no evidence in his defense.  ER 114–16.  De Long's response was due on February 28, 2013, *see* Fed. R. Civ. P. 36(a)(3); ER 20, 48, but he did not provide it until June 14, 2013, ER 49.  Because his response was untimely, De Long was deemed to have admitted each request.  *See* Fed. R. Bankr. P. 7036; Fed. R. Civ. P. 36.[5]  The parties agree that if these deemed admissions were not withdrawn, they entirely disposed of the case.  Fox Br. 7–8, ECF No. 11; De Long Br. 18, ECF No. 17; *see also* ER 127–28, 130.

/////

---

        [3] That section provides, in relevant part,

        A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a).

        [4] At trial, however, the bankruptcy judge found De Long had signed the contract with the Foxes in his personal capacity.  *See* ER 610.  The court therefore refers in this order only to De Long, rather than Cascadian.

        [5] Rule 36 of the Federal Rules for Civil Procedure applies in bankruptcy adversary proceedings.  Fed. R. Bankr. P. 7036.  As described in more detail below, Rule 36 provides that a matter is admitted unless an answer or objection is served by the responding party, and may be withdrawn per the court's discretion to promote presentation of the merits of the action, and if it would not prejudice the requesting party.  *See* Fed. R. Civ. P. 36(b).

1    A pretrial hearing was set for January 15, 2014.  ER 2.  Before the hearing, on

2    November 19, 2013, De Long filed a motion to withdraw his deemed admissions.  ER 4–5.

3    De Long argued the admissions should be withdrawn because the requests for admission

4    "mirror[ed] the allegations in [the Foxes'] Complaint, all of which [De Long] denied in his

5    Answer."  ER 16.  Should the court deny his motion, he argued, it would be impossible to address

6    the merits of the parties' dispute.  ER 16.  Moreover, the Foxes would not be prejudiced if the

7    admissions were withdrawn because discovery remained open.  *Id.* at 16–17.  De Long's counsel

8    attached a declaration and explained he had timely prepared responses to the Foxes' requests, but

9    De Long did not return his verification until June.  ER 20.  The Foxes opposed the motion.

10   ER 24–38.  They argued De Long had not shown good cause for his delay, ER 32–35, and they

11   would suffer prejudice because only one month of discovery remained, ER 35–37.

12   The bankruptcy court held a hearing on December 17, 2013.  ER 77–99.  At the

13   hearing, the bankruptcy judge asked De Long for evidence of good cause for his delay.

14   ER 86-89.  De Long's attorney responded that he had been on medical leave, that his office had

15   experienced turnover among the associates assigned to the case, and that De Long had not timely

16   returned his verification.  *Id.*  After hearing the parties' arguments, the bankruptcy court denied

17   the motion and explained as follows:

18   
19   > This adversary proceeding was filed back in July of 2012, it's set to
> go to trial in January of 2014, withdrawing the admissions at this
20   > point presumably would require discovery to be reopened and
> extensive discovery for trial to be undertaken with respect to those
> admissions.

21   > . . . [T]hat prejudice could possibly be dealt with, but then . . . the
22   > third point is whether there's good cause shown for the delay.

23   > [The court cited *Conlon v. United States*, 474 F.3d 616, 622 (9th
> Cir. 2007), and *S.E.C. v. Global Express Capital Real Estate
24   > Investment Fund I, LLC*, 289 F. App'x 183 (9th Cir. 2008)] . . . I've
> attempted to plumb the evidence and the arguments being presented
25   > now [for] some reason for the delay from February of 2013 to
> November 2013 for the filing of this motion.

26   > First, the explanation and the evidence presented is that the
27   > defendant just didn't provide Counsel with the [signed] verification
> to send it back.

28

. . . Counsel has indicated . . . he was out of the office with some illness, there are other attorneys no longer with the firm who were supposed to be watching it.

Okay.  But by July 2013 and August it's clear that there are admissions that the plaintiff's counsel has said my client will not allow me to withdraw them and then again in October that gets reaffirmed when now here we are in December of 2013 with this.

I do not see and hear any good cause.

. . .

This case is going eighteen months into it, it's ready to go to trial. And what I'm hearing from the defendant is the cause you have is that I didn't want to respond and now if you grant [my] motion then we don't have to go to trial in January.

ER 96–98; *see also* ER 77 (minute order denying the motion).  The case went forward.

B.   Motions in Limine

The pre-trial conference and trial were continued by stipulation.  ER 318–19; *see also* Stipulation, No. 12-2298 (E.D. Cal. filed Jul. 9, 2012), ECF No. 12.[6]  During that time discovery remained open for production of De Long's banking records, which he never fully produced.  ER 192–93.

On June 11, 2014, about five months after the court denied the motion to withdraw, the parties appeared for trial.  ER 190.  A different bankruptcy judge presided. ER 188.  The Foxes hand-filed two motions in limine, seeking exclusion of any evidence or arguments inconsistent with the deemed admissions and the exclusion of the Declaration of Robert De Long.  Both motions were denied.  ER 185–86, 197.  De Long also hand-filed a motion in limine, which again sought withdrawal of his deemed admissions, and he presented largely the same arguments as he had before.  ER 173–81.  The Foxes opposed the motion at oral argument,[7] pointing out that they had prepared for trial on the basis of the previous order. ER 194–95.  The Foxes accused De Long of gamesmanship for renewing his motion at "the last hour."  *Id.*

_____

[6] The court takes judicial notice of this document.  *See supra* note 2.

[7] Because the parties served their motions in limine by hand on the first day of trial, they had prepared no written oppositions.

1    The court found the Foxes were themselves guilty of gamesmanship and

2    questioned the propriety of their requests for admissions.  The court asked, "Why do you bother

3    to ask the defendant to admit something that obviously goes against the crux of his answer, . . .

4    and then expect to go to trial and convince me, the trial judge, that you have a case?"  ER 195,

5    202.  This strategy, in the court's opinion, could not make for a triable case.  *Id.* at 195.  In

6    reaching this conclusion, the court found *Perez v. Miami-Dade County*, 297 F.3d 1255 (11th Cir.

7    2002), was persuasive authority.  ER 222–23.  The court also criticized the Foxes' litigation

8    strategy:

9    
10   > I was a practicing attorney for a while.  I wouldn't be charging
     > debtor with fraud or things like that unless I felt I had a damn good
     > case. . . . To go into a case without your facts and your ducks in a
11   > row, even if there's so-called admissions that allow them, that's
     > something that I don't think is right.

12   ER 204–05.

13   Turning to Rule 36(b), the court found prejudice to the Foxes would be minimal if

14   the admissions were withdrawn because discovery had been extended several times.  ER 196.

15   The court therefore granted De Long's motion in limine, despite the previous order denying his

16   motion to withdraw:

17   > The Court can always change its mind and, unfortunately, I have
     > looked at it and I just don't go along with it.  I don't think that the
18   > defendant should be permitted [sic] to produce evidence that
     > supports his case.  Even if . . . [the answer] to the requests [was]
19   > submitted at a late date, I still feel the defendant should be
     > permitted to provide a defense.
20   
21   > . . .

22   > I think I have authority to grant the motion, even though it was
     > previously denied, because the circumstances have changed, for one
23   > thing.  Another is, I'm the trial judge and there's no way—there is
     > absolutely no way I can render a fair decision if the defendant is
     > barred from presenting a case.
24   

25   ER 197–202.  The Foxes were not allowed to brief the issue, ER 201, 206, 210–14, but the court

26   acknowledged De Long had been very "lax," ER 198, and to avoid prejudice, discovery was

27   reopened "to do it over again," ER 205–06.  The court allowed the Foxes to depose De Long one

28   more time and to propound "fifteen specialized interrogatories."  ER 225.  The court expected the

1  trial would last a day or less, but a two-day trial was set after the Foxes said one day would not be

2  possible.  ER 219–20.

3      C.      Trial Proceedings

4          A two-day bench trial took place before the trial judge on November 17 and

5  December 3, 2014.  ER 269–305, 590–767.  Mr. Guthrie appeared for the Foxes, and Mr. Kravitz

6  appeared for De Long.  *Id.*  On the first day, the parties gave opening statements, and the Foxes

7  began their case in chief.  ER 590–767.  They called De Long and Andrew Fox.  *Id.*  On the

8  second day, the Foxes informed the court they would call three further witnesses: Eric London,

9  another former De Long client; Jeremy Gyori, the contractor who ultimately finished the project;

10  and Randy Stout, a construction expert.[8]  ER 272.  Eric London would have testified that

11  De Long told him incorrectly that he owned a nursery, as Andrew Fox had testified on the first

12  day.  ER 296.  Gyori and Stout were construction experts who would testify that given the

13  circumstances of the project when De Long took payments, he could not have reasonably

14  believed he would finish the job.  ER 279–80.  Stout could also have testified that De Long

15  intended to divert the Foxes' payments to other jobs.  ER 246–48.  Gyori would also have

16  testified that De Long did not complete certain tasks, and in his experience, the job was not as far

17  along as De Long represented.  *See* ER 277–91.

18          The judge responded that if this testimony were offered, it would not be

19  persuasive.  ER 280.  He cited the example of a "gambler at the ATM machine": a gambler

20  always believes he will win when he makes a withdrawal.  ER 281.  The troubling aspect of the

21  Foxes' case was "that every contractor seems to think he will be able to finish the contract, even

22  though the odds are against him, and as long as in his mind he thinks he can do it, he hasn't

23  committed fraud."  ER 282.

24          [8] Before trial, the Foxes filed the declaration of Adam Nichols, the superintendent who

25  oversaw construction of the Foxes' home.  ER 265–67.  Nichols was prepared to testify that
    De Long overestimated the time he spent using a dump truck and bobcat loader on the Foxes' lot

26  and did not complete landscaping work.  *Id.*  It appears, however, that the Foxes did not intend to
    offer his testimony at trial.  *See* ER 272 (counsel lists London, Gyori, and Stout as witnesses who

27  will testify on the second day, but not Nichols).  The court therefore does not reach the
    admissibility of his testimony or its de facto exclusion.

28

1      De Long then moved to strike London's, Stout's, and Gyori's testimony as

2  irrelevant.  ER 282.  He argued no witness could "testify as to what work Mr. De Long could

3  have done" because no one but De Long knew "what his overhead [was]" or "how much he pays

4  himself."  ER 282–83.  Only De Long could know if subcontractors were available.  *Id.*

5      The court agreed, and despite the Foxes' repeated objections, the motion to strike

6  was granted and the Foxes' motion to reconsider was denied.  ER 283–93.  The bankruptcy court

7  found any further testimony would be irrelevant, unconvincing, and a waste of time.  *See, e.g.*, ER

8  284 ("I don't want to waste all of my time listening to this stuff when it's not going to convince

9  me."); ER 285 ("I'm telling you though that even if the witness does come on and testify and says

10  all of this, I don't have to believe it, and I don't."); ER 288 ("I heard Mr. De Long's testimony,

11  and I believe Mr. De Long, okay?  So if you bring a witness who is not a percipient witness, I'm

12  not going to believe him over Mr. De Long."); ER 290 ("I have had many of these cases where

13  the contractor doesn't finish the job, and the clients always come in and sue for fraud.  And most

14  of the time, like I indicated, the contractor/debtor is trying desperately to complete the project.").

15      De Long moved for judgment on partial findings, and the court granted the motion.

16  ER 301.  As to the claim under 11 U.S.C. § 532(a)(2), the court found the Foxes had shown

17  neither that De Long had made a material misstatement nor that they had suffered any damages as

18  a result.  ER 302–03.  The Foxes had not proven their case under § 532(a)(4) because De Long

19  was not a fiduciary, as that section requires.  ER 303.  And finally, the Foxes had not shown that

20  De Long had acted with the requisite intent to cause harm, so their claim under § 532(a)(6) was

21  unproven.  *Id.*  The Foxes requested the court provide a written ruling and were denied.

22  ER 301–02.  Judgment was entered against the Foxes, and the obligation owed to them was found

23  to be dischargeable.  ER 303.  They timely filed this appeal.  ECF No. 1.

24  II.      JURISDICTION

25      District courts have jurisdiction to hear appeals from the final judgments of

26  bankruptcy courts.  28 U.S.C. § 158(a); Fed. R. Bankr. P. 8005.  The Foxes have elected in their

27  notice of appeal to be heard by this court rather than by the Bankruptcy Appellate Panel.  ECF

28  No. 1.  A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or

1  decree or remand with instructions for further proceedings." *Cesar v. Charter Adjustments Corp.*,

2  519 B.R. 792, 795 (E.D. Cal. 2014); *see also* Fed. R. Bankr. P. 8013 (2014), *omitted by* Order

3  Amending Fed. R. Bankr. P. (Apr. 25, 2014).[9]

4  III.    <u>STANDARD OF REVIEW</u>

5        On appeal, a bankruptcy court's factual findings are reviewed for abuse of

6  discretion. *Acequia, Inc. v. Clinton*, 787 F.2d 1352, 1357 (9th Cir. 1986).  Review for abuse of

7  discretion and review for clear error are functionally equivalent standards.  *See United States v.*

8  *Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009).  "[A] finding is 'clearly erroneous' when although

9  there is evidence to support it, the reviewing court on the entire evidence is left with a definite

10  and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S.

11  564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also*

12  *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).  This "definite and firm conviction" arises when

13  the trial court's decision is "illogical, implausible, or without support in inferences that may be

14  drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir.

15  2009) (en banc).  But "[w]here there are two permissible views of the evidence, the factfinder's

16  choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.  Errors of law are

17  an abuse of discretion. *Hinkson*, 585 F.3d at 1261 (citing *Cooter & Gell v. Hartmarx Corp.*, 496

18  U.S. 384, 405 (1990)).

19        Conclusions of law are reviewed de novo. *Acequia*, 787 F.2d at 1357.  De novo

20  review requires the court "review the matter anew, the same as if it had not been heard before,

21  and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001,

22  1004 (9th Cir. 2006); *In re Jefferies*, 468 B.R. 373, 377 (B.A.P. 9th Cir. 2012).

23        The Foxes appeal the bankruptcy court's judgment on three grounds.  First, they

24  argue the bankruptcy court erred in granting De Long's motion in limine to withdraw deemed

25  admissions.  Second, they argue the bankruptcy court erred by denying their motions in limine to

26

27  ⁹ "Despite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re*

28  *Great Atl. & Pac. Tea Co., Inc.*, No. 14-4170, 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015).

1   exclude De Long's direct testimony and any evidence contrary to his deemed admissions.  Third,

2   they argue the bankruptcy court abused its discretion by excluding London's, Stout's, and Gyori's

3   testimony at trial.  The court addresses each argument in turn.

4   IV.    DE LONG'S MOTION IN LIMINE

5          A.    Reconsideration of a Another Judge's Previous Order

6                The Foxes first contend the motion in limine was an improper request for

7   reconsideration.  Federal Rule of Civil Procedure 54(b) applies in bankruptcy adversary

8   proceedings.  Fed. R. Bankr. P. 7054(a).  Under Rule 54, "any order or other decision, however

9   designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

10  the parties . . . may be revised at any time before the entry of a judgment adjudicating all the

11  claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).[10]  As a general rule, the

12  bankruptcy court therefore had discretion to reconsider its earlier decision.  *In re Berg*, 532 B.R.

13  162, 166–67 (Bankr. S.D. Cal. 2015) (citing *City of L.A., Harbor Div. v. Santa Monica*

14  *Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)).

15               Because Rule 54(b)'s language does not address a particular standard or rule of

16  decision, courts have often looked to Rules 59(e) and 60(b) for guidance.  *See, e.g.*,

17  *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003); *Jadwin v. Cnty. of*

18  *Kern*, No. 07-0026, 2010 WL 1267264, at *9 (E.D. Cal. Mar. 31, 2010); *see also In re New Bern*

19  *Riverfront Dev., LLC*, No. 09-10340, 2015 WL 3451751, at *2 (Bankr. E.D.N.C. May 28, 2015)

20  (a motion for reconsideration is not a means for advancing legal arguments the court has

21  previously rejected); *In re First State Bancorporation*, No. 11-11916, 2014 WL 3051299, at *2

22  (Bankr. D.N.M. July 3, 2014) (same).  But those rules are not determinative: an interlocutory

23  order may be revised for any reason, even absent newly discovered evidence or an intervening

24  change in the law.  *Hydranautics*, 306 F. Supp. 2d at 968.

25  ────────────────────

26                [10] The Foxes originally directed the court to Federal Rule of Civil Procedure 60(b),
    incorporated by Federal Rule of Bankruptcy Procedure 9024.  *See* Fox Br. 19.  Rule 60 is not
27  controlling here because the bankruptcy court's order denying De Long's motion to withdraw
    deemed admissions, a discovery order, was not a final judgment.  *See Estate of Domingo v.*
28  *Republic of Philippines*, 808 F.2d 1349, 1351 (9th Cir. 1987).

1         Here, because one judge was asked to reconsider the interlocutory decision of

2    another previously assigned to the same case, the question is somewhat more complicated.  In

3    general, "judges who sit in the same court should not attempt to overrule the decisions of each

4    other."  *Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 379 (9th Cir. 1960) (citation and

5    quotation marks omitted).  "[J]udges must, in light of the overarching 'principles of comity and

6    uniformity,' make every effort 'to preserve the orderly functioning of the judicial process' when

7    reconsidering an order of a prior judge in the same case."  *Baldwin v. United States*, 823 F. Supp.

8    2d 1087, 1099 (D. N. Mar. I., 2011) (quoting *Castner*, 278 F.2d at 379–80).

9         In this Circuit, case law is inconsistent as to the standard that applies when one

10   judge must decide whether to reconsider another's order in the same case.  *Id.*[11]  In *Amarel v.*

11   *Connell*, the Ninth Circuit was "confronted . . . with the difficult problem of district court judges

12   exercising their 'broad discretion' over evidentiary rulings in different phases of the same case

13   and reaching contradictory results," 102 F.3d 1494, 1515 (9th Cir. 1996)—a fair description of

14   the situation in the adversary proceeding here.  The *Amarel* court reviewed the second judge's

15   decision for abuse of discretion.  *Id.*  The case is commonly cited for application of that standard

16   of review.  *See, e.g.*, *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1186 (9th Cir.

17   2006); *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir. 2001).  Moreover, the

18   *Amarel* court expressly held "that 'the interlocutory orders and rulings made pre-trial by a district

19   judge are subject to modification by the district judge at any time prior to final judgment, and

20   may be modified to the same extent if the case is reassigned to another judge."  *Amarel*, 102 F.3d

21   at 1515 (quoting *In re United States*, 733 F.2d 10, 13 (2nd Cir. 1984)).  It found a successor judge

22   has "'no imperative duty to follow the earlier ruling—only the desirability that suitors shall, so far

23   as possible, have reliable guidance how to conduct their affairs.'"  *Id.* (quoting *In re United*

24   *States*, 733 F.2d at 13).  In finding the successor district judge had not abused her discretion, the

25    

26       [11] In *Baldwin*, the court found the authorities cited here touched on essentially the same concerns, at least on the questions before it.  *See* 823 F. Supp. 2d at 1101.  It therefore "err[ed] on

27   the side of caution" and applied the "stricter *Delta Savings Bank* standard, which requires not just error, but 'clear error' that 'work[s] a manifest injustice.'"  *Id.* (quoting *Delta Sav. Bank v. United*

28   *States*, 265 F.3d 1017, 1027 (9th Cir. 2001)) (alterations in original).

*Amarel* court wrote that her decision was justified by a "sufficiently changed circumstance" in the testimony presented. *Id.* at 1516.

Later, in *Fairbank v. Cato Johnson*, the Ninth Circuit relied on *Castner v. First National Bank of Anchorage*, which it termed "[t]he leading Ninth Circuit case on the preclusive effect of an interlocutory holding by another court in the same case." 212 F.3d 528, 530 (9th Cir. 2000). Quoting *Castner*, the *Fairbank* court held that a judge has discretion to set aside a predecessor's decision if "cogent reasons" or "exceptional circumstances" require. *Id.* (quoting 278 F.2d at 380); *accord Preseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 79 (9th Cir. 1979). In *Fairbank*, a California Superior Court judge had denied the defendant's motion for summary judgment. *Id.* at 530. After two individual defendants were dismissed, the action became completely diverse and was removed to federal district court. *Id.* The defendants moved again for summary judgment, this time under the federal rule, and the federal court granted the motion. *Id.* The district court reconsidered summary judgment because it found the federal rule on summary judgment differed from that of California law. *Id.* at 532–33. The Ninth Circuit found these differences were a "cogent reason for reconsideration of the Superior Court's earlier decision." *Id.* at 532. It affirmed. *Id.*

*Castner* concerned a similar situation. A successor judge granted motions to dismiss and for summary judgment after the predecessor judge had denied the same motions. 278 F.2d at 380. In this situation, the Ninth Circuit observed, the later judge

> is faced with a dilemma: shall he adhere to the rule of comity and defer to the "erroneous" ruling of the first judge, thereby allowing a useless trial to proceed, or shall he reverse the order of the prior judge and permit immediate appeal, where he in turn may be reversed because he abused his discretion in overruling his colleague?

*Id.* The appellate court concluded it would be no abuse of discretion to overrule the prior judge. *Id.* "The second judge must conscientiously carry out his judicial function in a case over which he is presiding. He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case." *Id.* Whether the second judge was correct is a separate question: "His

/////

12

1  substantive ruling may be, as a matter of law, erroneous, yet his right and power to do so is

2  perfectly justified as a matter of discretion."  *Id.* at 380–81.

3       Finally, in *Delta Savings Bank v. United States*, the Ninth Circuit held that a

4  second judge had discretion to review the decision of a predecessor in the same case, but that the

5  doctrine of the law of the case limited that discretion: "The prior decision should be followed

6  unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice,

7  (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially

8  different evidence was adduced at a subsequent trial."  265 F.3d 1017, 1027 (9th Cir. 2001)

9  (quoting *Jeffries v. Wood*, 114 F.3d at 1484, 1489 (9th Cir. 1997)).  In *Delta Savings Bank*,

10  reconsideration was appropriate in light of intervening case law that called the previous judge's

11  decision into question; moreover, the first ruling "came in an earlier case with different parties[,]

12  which was voluntarily dismissed without prejudice."  *Id.*

13       Here, however the particulars of the standard are described, this court reviews the

14  trial judge's decision to reconsider his colleague's prior order for an abuse of discretion.  *See*

15  *Delta Savings Bank*, 265 F.3d at 1027 (quoting *Amarel*, 102 F.3d at 1515); *Fairbank*, 212 F.3d

16  at 530; *Castner*, 278 F.2d at 380.  Even under the strictest articulation of that discretion, which

17  speaks of "clear error" and "manifest injustice," the trial judge did not err.  He found that the

18  circumstances of the case had changed because trial had not gone forward as the parties had

19  expected.  *See* ER 191.  And although the trial judge did not use the words "manifest injustice,"

20  that was the spirit of his ruling.  *See, e.g.*, ER 202 ("[T]here is absolutely no way I can render a

21  fair decision if the defendant is barred from presenting a case.").  He "charged with the

22  responsibility of conducting the trial to its conclusion," *Castner*, 278 F.2d at 380; he was

23  "responsible for the legal sufficiency of the ruling, and is the one that will be reversed on appeal

24  if the ruling is found to be erroneous," *Fairbank*, 212 F.3d at 530.

25       The court now turns to the merits of De Long's motion.

26      B.    <u>Withdrawal of Deemed Admissions</u>

27       Federal Rule of Civil Procedure 36, incorporated by Federal Rule of Bankruptcy

28  Procedure 7036, allows a litigant to request another party admit the truth of relevant matters

1   within the scope of discovery.  Fed. R. Civ. P. 36(a)(1).  "Admissions are sought, first, to

2   facilitate proof with respect to issues that cannot be eliminated from the case and, second, to

3   narrow the issues by eliminating those that can be."  *Conlon v. United States*, 474 F.3d 616, 622

4   (9th Cir. 2007).  The Rule's goals are "truth-seeking in litigation" and "efficiency in dispensing

5   justice."  *Id.* (citing Fed. R. Civ. P. 36(b) advisory comm. note).  "The rule is not to be used . . . in

6   the hope that a party's adversary will simply concede essential elements."  *Id.* (citing *Perez*, 297

7   F.3d at 1258).

8           A party who receives a request to admit must respond in writing within thirty days,

9   otherwise that party is deemed to have admitted the matter as requested.  Fed. R. Civ. P. 26(a)(3).

10  A matter admitted under Rule 36 is "conclusively established unless the court, on motion, permits

11  the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).  Following the text of Rule

12  36(b), the Ninth Circuit has confirmed an admission, deemed or otherwise, may be withdrawn

13  only if both "(1) 'the presentation of the merits of the action will be subserved,' and (2) 'the party

14  who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice

15  that party in maintaining the action or defense on the merits.'"  *Conlon*, 474 F.3d at 621 (quoting

16  Fed. R. Civ. P. 36(b)).  It is an abuse of discretion not to consider both factors.  *Id.* at 625.

17          "The first half of the test in Rule 36(b) is satisfied when upholding the admissions

18  would practically eliminate any presentation of the merits of the case."  *Hadley v. United States*,

19  45 F.3d 1345, 1348 (9th Cir. 1995).  In the second half of the test, the party who relies on the

20  admissions must prove it would be prejudiced were the admissions withdrawn.  *Conlon*, 474 F.3d

21  at 622.  "Prejudice" in this context means more than "that the party who obtained the admission

22  will now have to convince the factfinder of its truth."  *Hadley*, 45 F.3d at 1348 (quoting *Brook*

23  *Village N. Assocs. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)).  "Rather, it relates to the

24  difficulty a party may face in proving its case," for example, if key witnesses are now

25  unavailable.  *Id.* (quoting *Brook Village*, 686 F.2d at 70).

26          But Rule 36(b) is permissive: "[T]he court may permit withdrawal or amendment

27  if it would promote the presentation of the merits of the action and if the court is not persuaded

28  that it would prejudice the requesting party in maintaining or defending the action on the merits."

1   Fed. R. Civ. P. 36(b).  For this reason, although the two factors in the Rule's text are necessary

2   conditions of withdrawal, the court may also consider others.  *Conlon*, 474 F.3d at 621, 624–25.

3   For example, the court may consider whether the motion was delayed without good cause,

4   whether the moving party has a good case on the merits, and whether the admissions were used to

5   obtain unfair tactical advantage.  *See id.* at 622, 625 (citing *Perez*, 297 F.3d at 1268).

6           Here, first, the parties agree De Long's deemed admissions would have disposed

7   of the case's merits if not withdrawn. Fox Br. at 7–8; De Long Br. at 18; ER 127, 130.  Second,

8   the bankruptcy judge considered what prejudice the Foxes would suffer if the admissions were

9   withdrawn.  *See* ER 203 ("You [the Foxes] had an opportunity to ask the defendant again about

10  his defenses. . . . You had ample opportunity to review the defendant.  You had him under your

11  authority in a deposition.  You have the right to ask him any kinds of questions.  That's adequate,

12  it seems to me, for the plaintiffs to get the information they need to prepare their case."); ER 204

13  ("One of the reasons [De Long was] not allowed to withdraw the admissions, was because you

14  needed more time.  The [trial] was about to be started.  Well, it turns out that the parties agreed to

15  continue the case for a substantial period of time and, not only that, but to keep discovery open

16  for the plaintiff.").  After he granted the motion to withdraw the admissions, the trial judge

17  extended discovery to minimize any prejudice.  *See* ER 205–06 ("I'm giving you time to do

18  [discovery] over again."); ER 224–25 (reopening discovery to allow the Foxes to depose De Long

19  and propound fifteen special interrogatories).

20          The bankruptcy judge also considered De Long's diligence in the case.  *See*

21  ER 198 ("[T]he defendant was very lax here, I grant you. . . .).  And he repeatedly emphasized

22  that the Foxes' requests for admissions "[went] against the crux of [De Long's] answer," ER 195,

23  and appeared to have been tactical, *see* ER 194–95 (noting the admissions would allow the Foxes

24  "to prove a case without proving it" and finding this troubling); ER 202 ("That is not the reason

25  [*i.e.*, the purpose] for the request for admissions.").

26          *Perez, supra,* was particularly persuasive to the bankruptcy court.  *See, e.g.*, ER

27  222–23.  In that case, as here, the plaintiff's request for admissions duplicated the complaint's

28  allegations, which the defendant had denied elsewhere.  297 F.3d at 1258.  The defendant had

1    missed a reply deadline, so the district court denied its motion to withdraw deemed admissions.

2    *Id.* at 1265–66.  On appeal, the Eleventh Circuit reversed because the district court had not

3    considered the two factors outlined in Rule 36(b).  *Id.* at 1269.  The appellate court concluded its

4    opinion by condemning the plaintiffs' misuse of requests for admissions: it held Rule 36 was not

5    meant to be used "with the wild-eyed hope that the other side will fail to answer and therefore

6    admit essential elements (that the party has already denied in its answer)."  *Id.* at 1268.  As noted

7    above, the *Conlon* court also endorsed this view of Rule 36.  *See* 474 F.3d at 622, 625 (citing

8    *Perez*, 297 F.3d at 1268).

9            The Foxes argue incorrectly that the bankruptcy court was obligated to consider

10   whether De Long had shown good cause for his delays.  Fox Br. 27–31.  Rule 36 and the cases

11   that interpret that rule do not compel a trial judge to consider whether the moving party has

12   shown good cause for its failure to respond.  The Rule is silent on this point.  Only the two factors

13   in Rule 36's text are essential to a trial court's analysis.  *See Conlon*, 474 F.3d at 625 ("[A]

14   court's failure to consider [the two factors in Rule 36's text] will constitute an abuse of discretion.

15   . . . However, in deciding whether to exercise its discretion when the moving party has met the

16   two-pronged test of Rule 36(b), the . . . court may consider other factors, including whether the

17   moving party can show good cause for the delay . . . .").

18           The court also disagrees with the Foxes that the bankruptcy court improperly

19   overlooked the second factor, prejudice.  Their definition of prejudice ignores controlling circuit

20   precedent.  *Compare* Reply Br. at 8 (arguing "*no* discovery, whether 'limited' or otherwise, could

21   serve as an adequate substitute for the deemed admissions," which "remove[d] critical items from

22   dispute" (emphasis in original)) *with Hadley*, 45 F.3d at 1348 ("The prejudice contemplated by

23   Rule 36(b) is not simply that the party who obtained the admission will now have to convince the

24   factfinder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, *e.g.*,

25   caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with

26   respect to the questions previously deemed admitted." (citation and quotation marks omitted)).

27   From a plaintiff's perspective, a deemed admission is always better than discovery; this cannot be

28   the prejudice Rule 36 contemplates.  Furthermore, as described above, the bankruptcy court heard

1   argument from the Foxes on prejudice, it acknowledged that prejudice, and it reopened discovery.

2   *See* ER 203–06, 224–25.  The *Conlon* court in fact suggested this approach.  *See* 474 F.3d at 624

3   ("[W]e are reluctant to conclude that a lack of discovery, without more, constitutes prejudice.

4   The district court could have reopened the discovery period, and prejudice must relate to the

5   difficulty a party may face in proving its case at trial." (citing *Perez*, 297 F.3d at 1268, and

6   *Hadley*, 45 F.3d at 1348)).  Neither have the Foxes shown any key witness or other essential

7   evidence was unavailable to them.

8            In conclusion, the bankruptcy trial judge did not abuse his discretion by

9   considering the two factors outlined in Rule 36, minimizing prejudice by reopening discovery and

10  continuing the trial, and relying on *Perez*, even heavily, which he could properly consider as

11  persuasive authority.

12           C.       Due Process

13           The Foxes also argue the bankruptcy court denied them due process by hearing

14  and granting De Long's motion in limine.  Their argument rests on two bases: De Long's motion

15  in limine was brought without adequate notice, and the bankruptcy court declined any written

16  opposition.  Fox Br. 23–24.  "Whether a particular procedure comports with basic requirements of

17  due process is a question of law" this court reviews de novo.  *In re Garner*, 246 B.R. 617, 619

18  (B.A.P. 9th Cir. 2000).

19           As a general matter, "[t]he fundamental requirement of due process is the

20  opportunity to be heard at a meaningful time and in a meaningful manner."  *Matthews v.*

21  *Eldridge*, 424 U.S. 319, 902 (1976) (citation and quotation marks omitted).  Interested parties

22  must receive "notice reasonably calculated, under all the circumstances, . . . to afford [them] the

23  opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

24  306, 314 (1950).  "The notice must be of such nature as reasonably to convey the required

25  information, and it must afford a reasonable time for those interested to make their appearance."

26  *Id.* (citation omitted).  The Ninth Circuit has described the notice burden as "fairly low."

27  *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1202 (9th Cir. 2008).

28  /////

1   Here, De Long gave notice of his intent to file a motion in limine for withdrawal of

2   deemed admissions in his pre-trial statement, filed on May 8, 2014, a little more than a month

3   before trial was set to begin. *See* ER 572. The Foxes appeared on June 11, 2014 and hand-filed

4   motions in limine to exclude any testimony contrary to De Long's deemed admissions. The

5   bankruptcy court refused any written opposition to the motion in limine but heard extensive oral

6   argument from both the Foxes and De Long. *See generally* ER 190–226.

7   This process was sufficiently calculated, under the circumstances of this case, to

8   afford the Foxes an opportunity to present their case against withdrawal of De Long's deemed

9   admissions. De Long's pretrial statement gave the Foxes notice he would contest the court's

10   previous decision to leave his deemed admissions in place. The Foxes' own motion in limine, to

11   exclude any testimony contrary to De Long's deemed admissions, shows they anticipated

12   revisiting the issue. The bankruptcy court heard their arguments, but ultimately found them

13   unpersuasive. The Foxes have cited no authority that mandates written oppositions in these

14   circumstances, and the court is aware of none.

15   V.      FOXES' MOTIONS IN LIMINE

16   The Foxes filed two motions in limine. In the first, they moved to preclude

17   De Long from offering any testimony inconsistent with his deemed admissions. ER 100–42.

18   This motion is the flip side of De Long's motion in limine, and the bankruptcy court therefore did

19   not err by denying it after it granted De Long's motion.

20   Some background information is necessary to explain the second motion. The

21   Eastern District of California Bankruptcy Court's Local Rules provide for an alternate direct

22   testimony procedure. *See* E.D. Cal. Bankr. L.R. 9017-1. This procedure requires the pretrial

23   disclosure, by each witness, of an alternate direct testimony declaration: "a succinct written

24   declaration, executed under penalty of perjury, of the direct testimony which that witness would

25   be prepared to give as though questions were propounded in the usual fashion." *Id.* R. 9017-

26   1(a)(3). Plaintiffs must normally disclose declarations to opposing counsel two weeks before

27   trial; defendants must reciprocate one week before trial. *Id.* R. 9017-1(b).

28   /////

1    Here, when the bankruptcy court reset the trial for March 11, 2014, it ordered the

2    Foxes to file alternate direct testimony declarations by February 4, 2014, and De Long was to do

3    the same by February 11, 2014.  ER 155.  By stipulation and the bankruptcy court's approval, the

4    parties agreed to continue the trial to June 11, 2014, with the Foxes' declarations due April 28,

5    2014, and De Long's declarations due May 2, 2014.  ER 156–57.  The parties again agreed to

6    delay their disclosures a few days each.  ER 161–62.  Then, on the agreed date, the Foxes served

7    their declarations on De Long, but De Long did not serve any declarations on the Foxes until the

8    day before trial, about a month later than agreed.  ER 151, 164.  The Foxes, in their second

9    motion, sought to exclude De Long's deposition and any direct testimony.  ER 144–70.  On

10    June 11, 2014, the previously scheduled first day of trial, the bankruptcy court informed the

11    Foxes it would deny their motion after it continued the trial and extended discovery.  ER 185–86,

12    197.[12]

13    "The bankruptcy court has broad discretion to apply its local rules strictly or to

14    overlook any transgressions."  *In re Nunez*, 196 B.R. 150, 157 (B.A.P. 9th Cir. 1996).  Departures

15    from the local rules require reversal only when they affect a party's substantial rights.  *In re Speir*,

16    No. 10-1383, 2011 WL 5838570, at *5 (B.A.P. 9th Cir. Sept. 26, 2011) (citing *Prof'l Programs*

17    *Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994)).

18    Here, the bankruptcy court's decision to deny the Foxes' motions was not an abuse

19    of discretion, and did not affect the Foxes' substantial rights.  The prejudice they would have

20    suffered was erased when the bankruptcy court continued the trial for several months and

21    reopened discovery.

22    VI.    UNDERLINE EXCLUSION OF WITNESSES AT TRIAL

23    The Foxes challenge the bankruptcy court's decision to exclude any trial testimony

24    from Eric London, Randall Stout, and Jeremy Gyori.  They contend this ruling was an abuse of

25    /////

26    /////

27
28    _____

[12] For an unknown reason, the order denying the motion was not filed until September 9, 2014.  ER 185–86.

1   discretion and deprived them of the right to a fair trial.[13]  The bankruptcy court did not expressly

2   justify this decision.  The record suggests the judge excluded the testimony because he thought it

3   was irrelevant and its presentation would have been a waste of time.  *See* ER 282.  The parties'

4   briefing addresses these same concerns.  *See* Fox Br. at 34–39; De Long Br. at 11–17; Reply Br.

5   17–19.

6           "Both sides in a trial have the right to call witnesses . . . ."  *Barnett v. Norman*,

7   782 F.3d 417, 422 (9th Cir. 2015).  As a general rule, "every person is competent to be a witness"

8   in federal court.  Fed. R. Evid. 601.  Nevertheless, "within constitutional and statutory limits, trial

9   judges have discretion on the presentation of witness testimony, including decisions regarding the

10  competency of a person to testify, the number of witnesses a party may call, and the allowable

11  purposes of the testimony."  *Barnett*, 782 F.3d at 422.

12          The Federal Rules of Evidence govern the admissibility of evidence in bankruptcy

13  adversary proceedings.  *See* Fed. R. Bankr. P. 9017; Fed. R. Evid. 1101.  "Irrelevant evidence is

14  not admissible."  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a

15  fact more or less probable than it would be without the evidence; and (b) the fact is of

16  consequence in determining the action."  *Id.* R. 401.  But relevant evidence may be excluded "if

17  its probative value is substantially outweighed by a danger of one or more of the following: unfair

18  prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

19  presenting cumulative evidence."  *Id.* R. 403.  In the same vein, a trial court has discretion to

20  impose time limits to prevent wastes of time and cumulative evidence, but "rigid and inflexible"

21  time limits in trials "are generally disfavored."  *Amarel*, 102 F.3d at 1513.  In all, should doubt

22  cloud the evaluation of prejudice, confusion, delay, waste of time, or cumulativeness, admission

23  is the better practice.  2 Weinstein's Fed. Evid. § 403.02[2][c], at 403-18 & n.27 (2d ed.) (citing,

24  inter alia, *United States v. Moore*, 732 F.2d 983, 989–92 (D.C. Cir. 1984) ("[T]he balance should

---

25  [13] The Foxes do not clearly delineate the basis of their appeal on this issue.  Their briefing

26  argues the bankruptcy judge's decision to exclude these witnesses was an abuse of discretion.
    Fox Br. at 4; *see also id.* at 20.  This statement suggests they challenge the bankruptcy court's

27  application of the Federal Rules of Evidence.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141

28  (1997) (applications of the evidentiary rules are reviewed for abuse of discretion).

1  generally be struck in favor of admission when the evidence indicates a close relationship to the

2  event charged.")).

3           Where, as here, the case was tried to the bankruptcy court and not a jury, relevance

4  and prejudice are viewed through a different lens.  "Rule 403 has a limited role, if any, in a bench

5  trial."  *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180,

6  1216 (E.D. Wash. 2015).  "[I]n a bench trial, the risk that a verdict will be affected unfairly and

7  substantially by the admission of irrelevant evidence is far less than in a jury trial."  *E.E.O.C. v.*

8  *Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994).  For this reason, irrelevant evidence admitted

9  in error is unlikely to affect the verdict.  *Id.*  But in addition,

> in the context of a bench trial, evidence should not be excluded
> under [Rule] 403 on the ground that it is unfairly prejudicial.  Under
> the Federal Rules of Evidence, admissibility of evidence is favored
> unless the probative value of the evidence is so low as to warrant
> exclusion when prejudice is a factor.  Rule 403 was designed to
> keep evidence not germane to any issue outside the purview of the
> jury's consideration.  For a bench trial, . . . the [trial] court can hear
> relevant evidence, weigh its probative value and reject any
> improper inferences.

15  *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) (citation omitted).  *See also United States v.*

16  *Caudle*, 48 F.3d 433, 435 (9th Cir. 1995) ("[I]t would be most surprising if . . . potential prejudice

17  had any significance in a bench trial.").  These considerations have led one commentator to

18  conclude that

> on an appeal from a bench trial, the receipt of inadmissible
> evidence over objection is ordinarily not ground for reversal if there
> was other, admissible evidence sufficient to support the findings.
> The judge is presumed to have disregarded the inadmissible
> evidence and relied on the admissible evidence.  However, when
> the judge errs in the opposite direction by excluding evidence
> which ought to have been received, the judge's ruling is subject to
> reversal if it is substantially harmful to the losing party.

24  1 McCormick On Evid. § 60 (7th ed. 2013) (footnotes omitted).

25           That said, "[e]xcluding relevant evidence in a bench trial because it is cumulative

26  or a waste of time is clearly a proper exercise of the judge's power."  *Gulf States Utils. Co. v.*

27  *Ecodyne Corp.*, 635 F.2d 517, 518 (5th Cir. 1981); *accord United States v. Sullivan*, 575 F. App'x

28  793, 794 (9th Cir. 2014) ("[T]he district court [presiding over a bench trial] did not abuse its

1    discretion in excluding polygraph evidence pursuant to Rule 403 of the Federal Rules of

2    Evidence, even though the court did not cite that rule in its decision.  The district court could

3    reasonably conclude that such evidence would not be helpful to the court, but would cause undue

4    delay and would waste time." (citation omitted)).

5            The bankruptcy court's evidentiary rulings are ordinarily reviewed for an abuse of

6    discretion, *Joiner*, 522 U.S. at 141; *In re Vee Vinhnee*, 336 B.R. 437, 442–43 (B.A.P. 9th Cir.

7    2005), but not when the court excludes relevant evidence under Federal Rule of Evidence 403

8    without any explicit balancing, *United States v. Leo Sure Chief*, 438 F.3d 920, 925 (9th Cir.

9    2006).  In that instance, the trial court's decision is reviewed de novo.  *Id.*

10           On a similar note, the Ninth Circuit has held that in making evidentiary rulings, the

11   trial court need not mechanically recite each applicable rule and test; a decision may be affirmed

12   "based on any theory supported by the record and briefed by the parties."  *United States v.*

13   *Ramirez-Robles*, 386 F.3d 1234, 1245 (9th Cir. 2004).  But the circuit court has "emphasize[d]

14   the importance of explicit rulings": a trial court has a "duty to weigh the factors explicitly" to

15   "maintain[] the appearance of justice by showing the parties that the court recognized and

16   followed the dictates of the law."[14]  *United States v. Johnson*, 820 F.2d 1065, 1069 n.2 (9th Cir.

17   1987).  In some cases, a trial court errs as a matter of law "when it fails to place on the scales and

18   personally examine and evaluate *all* that it must weigh."  *United States v. Curtin*, 489 F.3d 935,

19   958 (9th Cir. 2007) (en banc) (emphasis in original).

20           The court now turns to each of London's, Stout's, and Gyori's testimony.

21       A.    Exclusion of Testimony by Eric London

22           Eric London, another De Long client, would have testified that De Long

23   incorrectly told him that De Long owned a nursery, just as De Long had told Andrew Fox.

24   ER 259.  London was also prepared to testify that De Long had not fulfilled his obligations in a

25   landscaping contract similar to the Foxes' and had dealt dishonestly with him.  *See* ER 259–63.

26   De Long moved to exclude London's testimony, and the motion was granted.  ER 282–84.  The

27   _____

28       [14] This practice "facilitates immeasurably the process of appellate review."  *Johnson*,
     820 F.2d at 1069 n.2.

1   record suggests the evidence was excluded because the judge thought its presentation would have

2   been a waste of time.  *See* ER 295–96.[15]

3          London's testimony could not have been admitted to attack De Long's character or

4   to prove De Long did not fulfill contractual obligations to London.  *See* Fed. R. Evid. 608(b)

5   (extrinsic evidence is not admissible to prove specific instances of a witness's conduct as part of

6   an attempt to attack that witness's character for truthfulness); *id.* R. 404(b)(1) ("Evidence of a

7   crime, wrong, or other act is not admissible to prove a person's character in order to show that on

8   a particular occasion the person acted in accordance with the character.").  But the testimony may

9   have been admissible to show De Long intentionally misrepresented to the Foxes that he owned a

10  nursery, and that this statement was not a mere slip of the tongue or poor choice of words.  *See id.*

11  R. 404(b)(2) (evidence of past crimes, wrongs, or other acts may be admissible to prove motive,

12  opportunity, intent, preparation, knowledge, identity, and absence of mistake or accident.).  If

13  admitted, this testimony may also have been relevant as circumstantial evidence of De Long's

14  knowledge and intent to obtain money by false statements.

15         Moreover, because De Long testified in the case, his character for truthfulness was

16  subject to attack.  *See* Fed. R. Evid. 608.  London's declaration suggests he would have offered an

17  opinion of De Long's character for untruthfulness, for which the Foxes could likely have laid a

18  foundation.  *See* ER 259–63 (describing London's personal interaction with De Long and their

19  contractual relationship).  The bankruptcy court concluded De Long was credible without ever

20  considering London's testimony.  This credibility determination was central to the court's

21  decision both to exclude other witnesses' testimony and to grant the motion for judgment on

22  partial findings.  *See, e.g.*, ER 288 ("I heard Mr. De Long's testimony, and I believe

23  Mr. De Long, okay?  So if you bring a witness who is not a percipient witness [of the

24  misrepresentations at issue], I'm not going to believe him over Mr. De Long.").

25  /////

26  _____

27      [15] De Long argued the evidence was irrelevant.  Exclusion on this basis alone would have
    been clearly erroneous.  For the reasons described below, London's testimony was relevant and
28  admissible.

1    The record includes no indication the bankruptcy court weighed the probative

2  value of London's testimony against any undue delay its presentation would have caused, let

3  alone concluded the danger of undue delay substantially outweighed its probative value for a

4  particular reason.  *See United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) ("The Rule

5  requires that the probative value of the evidence be compared to the articulated reasons for

6  exclusion and permits exclusion only if one or more of those reasons substantially outweigh the

7  probative value." (citation and quotation marks omitted)).  It is also unclear whether the court and

8  parties were discussing London's, Gyori's, or Stout's probable testimony.  This court therefore

9  reviews the decision to entirely exclude the testimony de novo.  *See Leo Sure Chief*, 438 F.3d

10  at 925.

11    Any undue delay would have been negligible.  The trial court had already received

12  London's alternate direct testimony declaration, so the parties could have proceeded directly to

13  London's cross- and redirect examination.  *See* E.D. Cal. Bankr. L.R. 9017-1(c).  Moreover,

14  De Long's credibility and his alleged misrepresentations were central to the Foxes' case;

15  London's testimony would have corroborated accounts of De Long's misstatements and

16  undermined the reliability of his previous testimony.  The exclusion of evidence central to a

17  party's case in the face of a low danger of delay is not only erroneous on de novo review, but is

18  also an abuse of discretion.  *See United States v. Evans*, 728 F.3d 953, 965–66 (9th Cir. 2013).

19  Appellate decisions affirming exclusions of evidence for wasting time note the proposed

20  evidence's marginal or uncertain relevance, the considerable extension of the trial that would

21  result, and alternate, more efficient avenues of presenting the same evidence.  *See, e.g.*,

22  *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 23 F.3d 239, 241 (9th Cir. 1994);

23  *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991); *United States v. Hearst*, 563 F.2d 1331,

24  1349 (9th Cir. 1977).  None of those circumstances was present here.  Two witnesses had testified

25  over only one day of trial, and counsel intended London's testimony to be brief: "one or two

26  facts."  ER 272.  Because this was a bench trial, the danger of confusion and unfair prejudice was

27  also minimal or nonexistent.  Exclusion of London's testimony was error.

28  /////

1          B.       Exclusion of Testimony by Randall Stout

2                 The bankruptcy court excluded testimony from Randall Stout, whom the Foxes put

3    forward as a construction expert.  If a witness is qualified by "knowledge, skill, experience,

4    training, or education," he or she may offer an opinion if it "will help the trier of fact to

5    understand the evidence or to determine a fact in issue."[16]  Fed. R. Evid. 702(a).  An opinion may

6    be excluded if "unhelpful and therefore superfluous and a waste of time."  Fed. R. Evid. 702,

7    advisory comm. note.  Expert testimony is also subject to the general rules on relevance and

8    prejudice.  *See id.* R. 401–03.  Because relevance depends on whether the evidence makes a "fact

9    . . . of consequence" "more or less probable," *id.* R. 401, the court must look to the elements of

10   the Foxes' claims.

11                 1.       Relevance; 11 U.S.C. § 523(a)(2)(A)

12                 The Foxes advanced claims under three subsections of 11 U.S.C. § 523(a), but

13   their briefing includes substantive argument as to only one: § 523(a)(2)(A).[17]  When, as here, a

14   creditor pursues a remedy under 11 U.S.C. § 523(a)(2)(A), the creditor must establish an "actual

15

16   _____

          [16] An expert's opinion must also be the product of reliable principles and methods applied
17   reliably to sufficient facts or data.  *See* Fed. R. Evid. 702(b)–(d).  The parties do not dispute, and
     the bankruptcy court appears to have assumed, that Stout was qualified.  Likewise, the sufficiency
18   of Stout's facts and data and his principles, methods, and applications were uncontested.  The
     court therefore does not address these matters.

19        [17] The Foxes' only argument addressing the other sections is as follows:

20        Essential to proving the Foxes claims under 11 USC § 523(a)(2)(A), 523(a)(4) and
          523(a)(6), was their ability to prove that De Long acted fraudulently at the time he
21        promised them he would complete construction by dates certain in exchange for
          advance payment.  Whether the evidence when [sic] to show fraud under Section
22        523(a)(2)(A), conversion of their money under Section 523(a)(4) or willful and
          malicious injury under Section 523(a)(6), evidence beyond that of the creditor
23        Mr. Fox and the debtor, De Long, is almost always necessary.   11 U.S.C.
          §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).
24

25   Fox. Br. at 33–34.  Similarly, the cases they cite address only § 523(a)(2)(A).  *See id.* at
     34–38 (citing *In re Kennedy*, 108 F.3d 1015 (9th Cir. 1997) and *In re Kong*, 239 B.R. 815
26   (9th Cir. BAP 1999)).  When asked at hearing whether the Foxes also appealed the
     bankruptcy court's judgment as to subsections (a)(4) and (a)(6), counsel cited only the
27   adversary complaint, and provided no argument linking Stout's testimony to subsections
     (a)(4) and (a)(6).

28

1   or positive fraud, not merely fraud implied by law." *In re Kong*, 239 B.R. 815, 820 (B.A.P.

2   9th Cir. 1999) (quotation marks and citation omitted).  The test for actual fraud has five parts:

> (1) the debtor made . . . representations;
>
> (2) that at the time he knew they were false;
>
> (3) that he made with the intention and purpose of deceiving the creditor;
>
> (4) that the creditor relied on such representation; [and]
>
> (5) that the creditor sustained the alleged loss and damages as the proximate result of the misrepresentations having been made.

9   *In re Eashai*, 87 F.3d 1082, 1086 (9th Cir. 1996) (citations and quotation marks omitted; brackets

10  in original).  Section 523(a)(2)(A) uses "common-law terms" that "carry the acquired meaning of

11  terms of art," *Field v. Mans*, 516 U.S. 59, 69 (1995); therefore, these elements "mirror the

12  elements of common law fraud," *In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996).  The Foxes

13  bore the burden to establish each by a preponderance of the evidence.  *Grogan v. Garner*,

14  498 U.S. 279, 291 (1991).  This court reviews the bankruptcy court's findings on these elements

15  for clear error.  *See In re Kelly*, 499 B.R. 844, 853 (S.D. Cal. 2013) (citing *In re Lansford*, 822

16  F.2d 902, 904 (9th Cir. 1987); *In re Rubin*, 875 F.2d 755, 758 (9th Cir. 1989); and *In re Int'l

17  Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007)).

18          Fraud must often be "brought to light by consideration of circumstantial

19  evidence," the debtor's fraudulent intent inferred from "totality of the circumstances."  *In re

20  Ettell*, 188 F.3d 1141, 1145 (9th Cir. 1999); *see also In re Kennedy*, 108 F.3d 1015, 1018 (9th Cir.

21  1997) ("Intent to deceive can be inferred from surrounding circumstances."); *In re Eashai*,

22  104 F.3d at 1125 ("[A] court may infer the existence of the debtor's intent not to pay if the facts

23  and circumstances of a particular case present a picture of deceptive conduct by the debtor."

24  (citation and quotation marks omitted)).  In this regard, "a debtor's testimony about his subjective

25  intent is not by itself legally dispositive . . . ."  *In re Ettell*, 188 F.3d at 1145.  Neither is his

26  inability to pay, nor the hopeless state of his finances.  *In re Kong*, 239 B.R. at 824 (citing *In re

27  Anastas*, 94 F.3d 1280, 1285–86 (9th Cir. 1996)).  "[T]he touchstone is whether the debtor

28  /////

1   intended to perform his promise when he made it." *In re Wood*, No. 13-00757, 2015 WL

2   4498152, at *6 (Bankr. D. Haw. July 22, 2015).

3          A creditor may also present evidence of the debtor's "reckless disregard for the

4   truth of a representation," which may suffice as a showing "that the debtor has made an

5   intentionally false representation in obtaining credit." *In re Anastas*, 94 F.3d at 1286.  In other

6   words, a representation may be fraudulent, even if the debtor does not know it was false, if he was

7   "conscious that he has merely a belief in its existence and recognizes that there is a chance, more

8   or less great, that the fact may not be as it is represented." *In re Gertsch*, 237 B.R. 160, 167–68

9   (B.A.P. 9th Cir. 1999) (quoting Restatement (Second) of Torts § 526 (1977)).

10                    2.    Case Law

11          In reaching his conclusion, the bankruptcy judge appears to have relied on *In re

12   Kong*, 239 B.R. 815, and similar cases.  *See* ER 281–82.  The Foxes also cite these cases

13   extensively to this court.  *See* Fox Br. 34–37.  Some discussion of each is necessary to explain the

14   court's decision here.

15          Kong was a "recreational gambler" who often used his credit card to obtain cash

16   advances for casino gambling.  239 B.R. at 818–19.  He had always repaid these advances.  *Id.*

17   at 819.  One summer, he visited Reno, Nevada and took two cash advances from his Advanta

18   credit card account.  *Id.*  The total advance was greater than $11,000, about $1,200 in excess of

19   his credit limit.  *Id.*  He had no other consumer debt, but was unable to make payments and filed

20   for bankruptcy.  *Id.*  Advanta filed an adversary complaint alleging the debt was not

21   dischargeable, as provided for in 11 U.S.C. § 523(a)(2)(A), the same statute at issue here.  *Id.*

22   The bankruptcy court held a trial and found the credit card company had not shown Kong made a

23   false statement.  *Id.*  The debt would therefore be discharged.  *Id.*

24          Advanta appealed.  The only issue was whether Kong "fraudulently failed to

25   disclose his intent not to repay."  *Id.* at 820.  The Bankruptcy Appellate Panel of the Ninth Circuit

26   affirmed the bankruptcy court's ruling.  *Id.* at 818.  The panel emphasized that no one fact is

27   determinative in credit-card-debt cases under § 523(a)(2)(A), where the court may look to

28   guidance from a nonexhaustive list of twelve factors.  *Id.* at 820–21 (citing *In re Dougherty*,

1   84 B.R. 653, 657 (9th Cir. B.A.P. 1988)).  Rather, a trial court must look to the totality of the

2   circumstances in each individual case.  *Id.* at 821–23.  The panel decided the trial court had not

3   abused its discretion, because it was "more likely that given [Kong's] history of paying his

4   creditors from winnings, [he] actually believed that he would be able to repay Advanta from his

5   winnings."  *Id.* at 825.  He therefore could not have defrauded Advanta.  *Id.*

6          The *In re Kong* panel found the case before it was indistinguishable from another

7   credit-card-gambling case, *In re Anastas*, *supra,* decided a few years earlier by the Ninth Circuit.

8   In *Anastas*, the debtor held several credit cards, which he maxed out over a period of six months

9   while gambling at casinos in Lake Tahoe.  94 F.3d at 1283.  He had always made minimum

10  monthly payments, but eventually was unable to keep up his account and filed for protection

11  under Chapter 7 of the Bankruptcy Code.  *Id.*  A creditor bank filed an adversary complaint,

12  citing § 523(a)(2)(A), and the bankruptcy trial court found the debt was not dischargeable because

13  the debtor "either lacked the intent to repay the debts at the time he incurred them, or at the least

14  was grossly reckless in incurring such debt."  *Id.*  The Bankruptcy Appellate Panel affirmed, but

15  the Ninth Circuit panel reversed.  *Id.* at 1283, 1287.

16         The Ninth Circuit's opinion focused on the specific nature of credit card debt, but

17  much of its analysis is applicable to § 523(a)(2)(A) generally.  It emphasized that section

18  523(a)(2)(A) "requires a showing of actual or positive fraud, not merely fraud implied by law, . . .

19  the type involving moral turpitude, or intentional wrong, and thus there can be no mere

20  imputation of bad faith."  *Id.* at 1286 (citations and quotation marks omitted).  The circuit court

21  recognized "that a view to the debtor's overall financial condition is a necessary part of inferring

22  whether or not the debtor incurred the debt maliciously and in bad faith," but that "the hopeless

23  state of a debtor's financial condition should never become a substitute for an actual finding of

24  bad faith."  *Id.*  The court reaffirmed its previous holding that "reckless disregard for the truth of a

25  representation" may suffice in a § 523(a)(2)(A) case, but cautioned that "[t]he correct inquiry is

26  whether the debtor . . . made the representation that he intended to repay the debt" rather than

27  "recklessly represented his financial condition."  *Id.*  The case was remanded with instructions to

28  enter judgment in the debtor's favor.  *Id.* at 1287.

1    Three facts allowed the *Anastas* court to conclude the debtor intended to repay his

2    debts: (1) the debtor ran up his debt over a period of several months, and always made payments

3    over this time period; (2) the debtor contacted his bank in an attempt to work out an alternative

4    payment plan; and (3) he testified he had always intended to pay back the debt, but had a

5    gambling addiction, which in the Ninth Circuit's words, "led him into unexpected financial

6    circumstances." *Id.* The case was therefore not an example of a credit card "kiting" scheme, a

7    ruse where a card holder makes minimum monthly payments with cash advances from other

8    cards, so creating the appearance of solvency and concealing his insolvency. *Id.* at 1284 (citing

9    *In re Eashai*, 87 F.3d at 1088–89).

10                              3.    This Case

11    Here, the Foxes' contract claim against De Long is not dischargeable if the Foxes

12    show he (1) made a representation, (2) he knew it was false, (3) by this representation, he

13    intended to deceive the Foxes, (4) the Foxes justifiably relied on this misrepresentation, and

14    (5) they sustained damages as a proximate result. *See In re Eashai*, 87 F.3d at 1086. The Foxes

15    could alternatively succeed on a showing of reckless disregard for the truth, as noted above, *see*

16    *In re Anastas*, 94 F.3d at 1286. Under a theory of reckless disregard, the Foxes' contract claim

17    would not be dischargeable if they showed De Long (1) made a representation, (2) he did not

18    know it was false, but he was "conscious that he [had] merely a belief," and knew "there [was] a

19    chance, more or less great, that the fact may not be as [he] represented," (3) the Foxes justifiably

20    relied on the representation, and (4) they sustained damages as a proximate result. *See In re*

21    *Gertsch*, 237 B.R. at 168 (quoting Restatement (Second) of Torts § 526 (1977)).

22    The Foxes proposed to show De Long obtained money from the Foxes by several

23    misstatements: (1) he promised to complete the job by August 23, 2011 and October 15, 2011, but

24    he had no intent to do so; (2) he promised to complete the job according to plan and in a

25    workmanlike manner, but never intended to finish or intended to use inferior materials; and (3) he

26    /////

27    /////

28    /////

29

1    promised he would use the Foxes' money only for work on their home, but he intended to divert

2    funds to other projects and uses.[18]  Fox Br. at 6 (citing ER 328–40).

3             Here, the bankruptcy court heard testimony from De Long and Andrew Fox.  After

4    hearing this evidence, the bankruptcy court concluded De Long was credible.  ER 288.  Because

5    he found De Long testified credibly that he had always intended to complete the job as promised

6    despite financial hardship, the bankruptcy judge also concluded the Foxes could not carry their

7    burden to show De Long had made a misrepresentation or intended to defraud them.  ER 281–82.

8    The bankruptcy judge concluded, "Whenever [De Long] took additional money, he did additional

9    work."  ER 280.  It agreed with De Long's counsel that "we don't know exactly what the

10   situation with Mr. De Long was, whether he might not be able ultimately to come up with enough

11   fundings [sic] to complete the project."  ER 285.  The court found any expert construction witness

12   would be no more expert or credible than De Long, ER 288, so it concluded any testimony from

13   Stout would be irrelevant and wasteful, ER 284.

14            The Foxes protested that Stout was prepared to offer relevant testimony to show

15   that De Long diverted funds from the Foxes' job, contrary to his promise, *see* ER 248–50, and

16   that De Long knew, or recklessly disregarded his uncertainty, that he could not complete the

17   project by the dates promised, ER 252.  Stout's opinion on this second point was based on

18
            [t]he amount of work that remained to be completed after
19          Cascadian abandoned the project, the lack of progress on the project
            at that time, the diversion of funds and promises to complete with
20          no additional funds[,] and the amount of work necessary and time it
            took for Gyori Development, Inc. to complete the project.

21   *Id.*  The bankruptcy court found specifically that this testimony would not be relevant to the issue

22   before it:  whether at the time De Long promised to perform, he in fact intended not to perform as

23   promised.  The court explained,

24
            It's like the gambler at the ATM machine.  He is taking the money
25          out, and the Ninth Circuit said there isn't a gambler alive that has
            taken money to a gambling table without the intention of winning.

26

27   _____

     [18] At hearing, De Long's counsel's emphatically and repeatedly asserted the Foxes had
     never even alleged De Long made a misstatement.  As described above and at length in the
28   record, this assertion was incorrect.

1

. . .

2

3

> [E]very contractor seems to think he will be able to finish the contract, even though the odds are against him, and as long as in his mind he thinks he can do it, he hasn't committed fraud.

4    ER 281–82.  The court was persuaded by evidence that despite De Long's dire financial straits, he

5    tried to finish the project, even on disadvantageous terms.  *See* ER 299 ("If De Long just wanted

6    money, why was he continuing to work?  Why was he trying so hard to finish the project?").

7            In a credit-card-gambler case, a debtor may withdraw large cash advances to fritter

8    away in a casino, but nevertheless have intended to repay his credit card debt when he withdrew

9    the cash.  *See In re Anastas*, 94 F.3d at 1286–87; *In re Kong*, 239 B.R. at 823.  This is true even

10   in an obvious financial emergency.  *See, e.g.*, *In re Anastas*, 94 F.3d at 1286–87 (debt was

11   dischargeable even though the debtor "could not have had any realistic hope of repaying his credit

12   card debt").  Other persuasive evidence may suggest the debtor meant to repay: he may do his

13   best to uphold the agreement, attempt to negotiate a modified payment plan, and testify he always

14   meant to pay it all back but was at the mercy of an addiction.  *See id.* at 1287; *see also In re*

15   *Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010) ("In order to avoid unjustifiably impairing a

16   debtor's fresh start, we have held that the exception should be construed strictly against creditors

17   and in favor of debtors." (citation and quotation marks omitted)); *In re Karelin*, 109 B.R. 943,

18   948 (B.A.P. 9th Cir. 1990) ("A substantial number of bankruptcy debtors incur debts with hopes

19   of repaying them that could be considered unrealistic in hindsight.  This by itself does not

20   constitute fraudulent conduct warranting non-discharge.").

21           A credit-card kiting scheme, by contrast, is an example of the true target of

22   § 532(a)(2)(A).  *See In re Eashai*, 87 F.3d at 1088–90.  In a kiting scheme, the debtor carefully

23   conceals his intent not to pay by making minimum monthly payments with cash advances from

24   other cards.  *Id.*  The debtor conceals both "his insolvency *and* his intent not to pay . . . ."  *Id.* at

25   1089 (quoting *Donaldson v. Farwell*, 93 U.S. 631, 633 (1876)) (emphasis in *Eashai*).  "[A] credit

26   card kiter is easily distinguishable from a bad luck debtor" because the kiter "manipulates the

27   credit card system to gain money, property, and services with no intention of ever paying for

28   /////

1   them." *Id.* at 1090.  A kiter does not, for example, call the bank and attempt to work out a

2   realistic payment plan.  *See In re Anastas*, 94 F.3d at 1287.

3                Here, the bankruptcy court heard that if Stout were allowed to testify, he would

4   paint a grim picture of a mismanaged and failing construction business to show De Long had no

5   realistic hope of completing the job when and how he promised.  Reliance on De Long's

6   testimony of his subjective intent to exclusion of Stout's testimony would have been an error of

7   law, *see In re Ettell*, 188 F.3d at 1141 ("[A] debtor's testimony about his subjective intent is not

8   by itself legally dispositive . . . ."), but the bankruptcy court considered more than De Long's

9   naked assertions of pure intent: De Long found ways to cut costs, *see* ER 653–58; negotiated

10  several amendments to the Foxes' contract in an attempt to work out an alternative plan for

11  completion; and testified he always meant to finish the job, but his foolish optimism got the better

12  of him, *see* ER 281–82, 299, 302–03.

13               At the same time, Stout would have testified to more than De Long's hopeless

14  financial condition.  He would also have testified that De Long designed the contract's payment

15  structure in a way that allowed him to divert funds from the Foxes' project and in fact diverted

16  funds.  *See* ER 246–48.  This evidence could have shown De Long never intended to apply the

17  Foxes' payments exclusively to their project and in fact did not, contrary to his promise.

18  Although the bankruptcy court discussed other portions of Stout's testimony with the Foxes'

19  counsel, the record includes no indication the bankruptcy court weighed this aspect of Stout's

20  testimony or acknowledged this alleged misstatement.  This part of Stout's testimony would also

21  have been relevant to a credit-card-debt analogy.  De Long's diversion of payments could be

22  analogized to the kiting schemer's use of cash advances to make minimum payments.[19]  The

23  bankruptcy court appears to have ignored this aspect of Stout's testimony.

24  /////

25

26          [19] This conclusion reinforces the court's decision above that London's testimony was
27  excluded erroneously.  Just as evidence of a credit card fraudster's use of multiple cards to hide
    his insolvency is relevant to show his liability, De Long's similar conduct in both the Foxes' and
28  London's projects may show he concealed his intent not to perform.

1    Some persuasive authority suggests this alone was an abuse of discretion, even in a

2    civil case.  *See, e.g., Doe v. Young*, 664 F.3d 727, 733 (8th Cir. 2011) (exclusion of "critical

3    evidence without adequate justification" is an abuse of discretion).  De novo consideration of

4    admissibility appears the more prudent course.  *See Leo Sure Chief*, 438 F.3d at 925.  Under this

5    standard, because a debtor's fraudulent intent is inferred from the "totality of the circumstances,"

6    *In re Ettell*, 188 F.3d at 1144–45; *In re Kennedy*, 108 F.3d at 1018; *In re Eashai*, 87 F.3d at 1087,

7    and because De Long's arguments, both here and at trial, do not address the alleged

8    misrepresentation that the Foxes' money would be applied only to their project, the court

9    concludes Stout's testimony was relevant and not wasteful.  The trial was a bench trial; there was

10   no danger of confusing a jury or wasting a jury's time, and the bankruptcy judge could have

11   disregarded irrelevant or prejudicial evidence.  The exclusion of Stout's testimony was error.

12       C.    Exclusion of Testimony by Jeremy Gyori

13   Jeremy Gyori completed the Foxes' job after De Long could not.  Gyori could

14   have testified about what work he completed and what De Long had left undone.  He could also

15   have offered opinion testimony that, based on his experience as a contractor, De Long's estimates

16   of how much work remained were inaccurate.  *See* Fox. Br. 35 (citing ER 277–91).  The Foxes

17   would have used this testimony to show De Long had no reasonable belief that he could finish the

18   job.  ER 279–80.[20]

19   The discussion above, regarding the admissibility of Randall Stout's expert

20   testimony about De Long's finances, applies equally to Gyori's expert testimony.  Because Gyori

21   could not have testified about diverted funds, the bankruptcy court did not abuse its discretion by

22   excluding Gyori's opinion testimony.

23

24   [20] The Foxes also argued that Gyori's testimony would be relevant to show De Long
     misrepresented the project's status.  *See also* ER 277–78 ("[De Long said] I need an advance on
25   the draw, meaning I need money ahead of what the schedule calls for.  So I'm not supposed to get
     it until the 75 percent stage, but I come to you and say, Hey, I'm 65 percent. . . . I'm entitled to an
26   advance so I can move forward.  And [the Foxes] make[] that payment relying on that but it's not
     true . . . .").  The bankruptcy court found, however, that Andrew Fox had testified that De Long
27   never requested an advance in light of his progress toward completion.  *See* ER 275–78.  This
     conclusion was not clearly erroneous on the record here.
28

1    As to his percipient testimony, the bankruptcy court appears to have concluded

2  Gyori's testimony would have been cumulative and wasteful because De Long already admitted

3  he had abandoned the project.  *See, e.g.*, ER 285 ("Mr. Guthrie: Mr. Gyori is [a percipient

4  witness]—The Court: No.  He can only say I completed the contract."); ER 287 ("The Court:

5  [Gyori] can come in and do his own estimate of how much of the job was finished, yes, but that is

6  inconclusive.  Mr. Guthrie: That's not what I was going to say.  What I was going to say is, the

7  way the contract is broken down by Mr. De Long—The Court: He signs a statement that says I

8  haven't finished the work, all right?  Good grief.  What more do you need?").  The parties have

9  identified no dispute surrounding what aspects of the work De Long completed or did not

10  complete or how Gyori's testimony would have resolved that dispute.

11    But regardless of Gyori's expertise or skill, the Foxes hired him to complete

12  specific tasks they believed were unfinished.  His testimony could have been relevant to show, for

13  example, the extent of the Foxes' reliance on De Long, whether their reliance was reasonable, and

14  whether De Long intentionally misrepresented the extent of unfinished work.  In this way,

15  Gyori's testimony did not entirely overlap with De Long's.  Nevertheless, these facts do not leave

16  the court "with a definite and firm conviction that a mistake has been committed."  *Anderson*,

17  470 U.S. at 573.  The bankruptcy court did not clearly err if it determined the probative value of

18  this narrow testimony was substantially outweighed by the danger that time would be wasted or

19  the evidence was cumulative.

20    D.    Harmlessness

21    The exclusion of London's and Stout's testimony was error, but erroneous

22  exclusion of evidence does not call for reversal if the exclusion was harmless in light of other

23  evidence admitted at trial.  *See, e.g.*, *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773 (9th Cir. 1981);

24  *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding

25  evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating,

26  modifying, or otherwise disturbing a judgment or order."), *incorporated by* Fed. R. Bankr. P.

27  9005.  In a civil case, reversal is appropriate "unless it is more probable than not that the error did

28  not materially affect the verdict."  *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005) (quoting

1  *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir.1997) (en banc)).  The error's beneficiary

2  must prove harmlessness.  *Id.*

3          Here, De Long has not borne that burden.  His credibility was central to both

4  parties' cases and formed the foundation of the bankruptcy court's decision, both to exclude other

5  witnesses' testimony and to grant the motion for judgment on partial findings.  Both Stout's and

6  London's testimony could have cast doubt on De Long's credibility.  The circumstances of

7  De Long's alleged misstatements were the keystone of the Foxes' case, and Stout and London

8  could have offered relevant testimony about those circumstances.  Whether De Long misstated

9  and concealed his intent—whether he was a hapless gambler or fund-shuffling fraudster—

10  depended critically on the erroneously excluded evidence.

11          Moreover, the bankruptcy court's apparent prejudgment of the case in favor of

12  De Long cannot go unmentioned.  The court assumed the Foxes' case was like all the others: "I

13  [have] had many of these cases where the contractor doesn't finish the job, and the clients always

14  come in and sue for fraud.  And most of the time, like I indicated, the contractor/debtor is trying

15  desperately to complete the project."  ER 290.  "[E]very contractor seems to think he will be able

16  to finish the contract, even though the odds are against him . . . ."  ER 282.

17          The court castigated counsel for prolonging the case beyond a day: "How long are

18  we going to take on this trial?  I was told it was only going to take a day.  I'm a recall judge.  I

19  don't have all kinds of time to devote to all these trials.  I have cases tomorrow, next two, three

20  days.  I have cases."  ER 671.  "I don't want to waste all of my time listening to this stuff when

21  it's not going to convince me."  ER 284.  The court balked at the Foxes' plan to call an expert

22  witness:  "What experts could you possibly have? . . . We have to go through all of that, too?"

23  ER 217.

24          In granting De Long's motion in limine to withdraw deemed admissions, the

25  bankruptcy court expressed exasperation at trying a case "where one side's hands are tied behind

26  them.  That's not the way to try a case, in my book.  In my book, you try a case on equal footing."

27  ER 206.  The trial judge articulated that fundamental rule correctly, while letting his exasperation

28  /////

1   stand in the way of applying it in this case.  The Foxes must have a fair chance to present their

2   case.

3   VII.     <u>CONCLUSION</u>

4          The bankruptcy court's order granting De Long's motion in limine and denying

5   the Foxes' motions in limine is AFFIRMED.

6          The bankruptcy court's orders excluding the testimony of Eric London and

7   Randall Stout, granting the motion for judgment on partial findings, and entering judgment in

8   favor of Robert De Long are VACATED and REVERSED.

9          This case is REMANDED for a new trial consistent with this order.

10          IT IS SO ORDERED.

11   DATED:  January 7, 2016.

12   

13   _____
     UNITED STATES DISTRICT JUDGE

14   

15   

16   

17   

18   

19   

20   

21   

22   

23   

24   

25   

26   

27   

28